PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**October 3, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>JOHN W SCHMIDT,<br><br>Debtor. | Case No. 07-42457 |
| KATHRYN A. ELLIS, Trustee of the Estate of John Schmidt,<br><br>Plaintiff,<br><br>v.<br><br>ESTATE RESCUE LLC, a Washington Limited Liability Corporation,<br><br>Defendant. | Adversary No. 07-04160<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on September 11, 2008. Plaintiff Kathryn A. Ellis (Trustee), Trustee of the Estate of John Schmidt (Debtor), in accordance with her amended complaint, seeks to avoid/recover a fraudulent transfer under 11 U.S.C. § 548, avoid a preferential transfer under 11 U.S.C. § 547 and/or seeks damages for violation of RCW 19.86.020, against Estate Rescue LLC (Defendant). At the conclusion of the trial, the Court took the matter under advisement. Supplemental memorandums were subsequently filed by both parties. This Memorandum Decision shall constitute Findings of Fact and Conclusions of

MEMORANDUM DECISION - 1

Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

# I

# FINDINGS OF FACT

Prior to filing bankruptcy, the Debtor owned real property located at 15511 SE 304th Pl, Kent, WA (Property). The Defendant contacted the Debtor regarding a possible purchase of this Property after a Notice of Trustee's Sale was recorded by Countrywide Home Loans (Countrywide). Countrywide was the holder of two loans secured by the Property. According to a Payoff Demand Statement from Countrywide dated January 8, 2007, the payoff amount as of that date on the first mortgage was $239,860.47 and the payoff amount on the second mortgage was $58,906.92.

Countrywide issued a letter on March 3, 2007, agreeing to release its second mortgage on the Property for $1,000. The letter further stated that closing must take place by a certain date and that "[t]his approval is exclusive to this offer only." On or about March 30, 2007, a Residential Real Estate Purchase and Sale Agreement for the Property was entered into between the Defendant, as seller, and Lisa Bramble, as buyer, for a purchase price of $289,950. On April 5, 2007, the Debtor signed a Quit Claim Deed conveying the Property to the Defendant. The Quit Claim Deed was recorded on April 16, 2007. A Settlement Statement dated April 18, 2007, from the Debtor to the Defendant indicates a contract sales price of $246,000, with a payoff on the first mortgage to Countrywide of $228,766.97, and a payoff on Countrywide's second mortgage of $1,000. A Settlement Statement on that same date from the Defendant to Lisa Bramble indicates a contract sales price of $289,950.

MEMORANDUM DECISION - 2

The Debtor filed a voluntary Chapter 7 petition on August 2, 2007. The Trustee filed a Complaint to Avoid/Recover Fraudulent Transfers; Fraud; Consumer Protection Act Violation against the Defendant on December 17, 2007. On May 14, 2008, the Court rendered an oral decision and Order Denying Motion for Summary Judgment filed by the Trustee. On May 20, 2008, the Trustee filed a Motion to Amend Complaint to add a claim for recovery of a preferential transfer under 11 U.S.C. § 547. The Trustee's Motion to Amend Complaint was granted and an Amended Complaint to Avoid/Recover Fraudulent Transfers; Fraud, Consumer Protection Act Violation (Amended Complaint) was filed on June 26, 2008.

## II

## CONCLUSIONS OF LAW

### A.   11 U.S.C. § 548

11 U.S.C. § 548(a)(1) provides in relevant part:

(a)(1)  The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
      (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

The Trustee argues that the transfer may be avoided under both 11 U.S.C. § 548(a)(1)(A) and (B) as a fraudulent transfer.

MEMORANDUM DECISION - 3

### 1. **11 U.S.C. § 548(a)(1)(A)**

Under the plain language of the statute, a claim for actual fraud under 11 U.S.C. § 548(a)(1) requires proof that a "debtor" transferred property with the actual intent to hinder, delay or defraud a creditor. There is no allegation of any wrongdoing on the Debtor's part in this case. Rather, the Trustee argues that the requisite intent to hinder, delay or defraud was possessed by the Defendant transferee.

"Cases hold that the intent of the transferee is imputed to the transferor only in extraordinary circumstances where the transferee controls the transferor." Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y, Inc. (In re Andrew Velez Constr., Inc.), 373 B.R. 262, 269 (Bankr. S.D.N.Y. 2007). "This situation normally arises in situations where the transferee is the Debtor's sole or dominant shareholder. The cases are careful to point out that vicarious intent is an extreme situation that is dependent upon nearly total control of a debtor by a transferee." Armstrong v. United Bank of Bismarck (Bob's Sea Ray Boats, Inc.), 144 B.R. 451, 459 (Bankr. D.N.D. 1992) (citations omitted).

The Court in Mishkin v. Jackson (In re Adler, Coleman Clearing Corp.), 263 B.R. 406, 447-49 (Bankr. S.D.N.Y. 2001) noted that imputation of the transferee's intent to the transferor might be justified in the following scenarios: (1) where the person or entity exercising control over the disposition of the debtor's property stands in a position to do so by reason of a relationship of ownership, executive office or other insider role; (2) the application of agency principles dictates the result; (3) the controlling person is considered to stand in a fiduciary capacity or hold a position of trust in the transferor entity; and (4) the rule imputes the fraudulent intent in order to recognize and discourage the misuse of the corporate form and

MEMORANDUM DECISION - 4

insider status as instruments to commit fraud by means of transferring property between affiliated entities.

A preponderance of the evidence does not present extraordinary circumstances justifying imputation of the Defendant's intent to the Debtor in this case. The Debtor is an individual rather than a corporate entity. The Defendant, therefore, does not have any ownership control or shareholder status in the Debtor. The Defendant is not related to the Debtor. The relationship between the parties was a business transaction for the transfer of a single parcel of real property. There is no evidence of an ongoing business relationship between the parties or prior course of dealing. Although the Debtor signed a limited power of attorney for this transaction, this was not sufficient to impose control. The Court is not aware of any authority that would support extending the rule allowing imputation of intent to the facts of this case.

Even if the Trustee could establish that the Defendant's intent could be imputed to the Debtor, the Trustee has failed to establish that the Defendant possessed the requisite intent to defraud a creditor. The Trustee's argument appears to be that the Defendant intended to defraud Countrywide in failing to disclose that he had an offer pending on the Property for $289,950. This lack of disclosure, however, is only evidence of intent to defraud if the Defendant had a duty to inform Countrywide of the pending sale. The Court is not aware of any such duty on the Defendant's part. It is irrelevant that the transaction brokered by the Defendant was a "double closing." Countrywide is a sophisticated lender and agreed to release its lien upon the closing of the sale from the Debtor to the Defendant. There is no evidence that Countrywide's agreement was contingent upon Defendant not re-selling to a third party, even if the transactions occurred simultaneously. Nor is there any evidence that

MEMORANDUM DECISION - 5

the Defendant misrepresented any of the facts to Countrywide. The Trustee has failed to establish a claim under 11 U.S.C. § 548(a)(1)(A).

## 2. 11 U.S.C. § 548(a)(1)(B)

It is undisputed that the closing of the sale from the Debtor to the Defendant is a transfer of a property interest of the Debtor, that occurred within two years of the filing of the petition, and that the Debtor was insolvent at the time or rendered insolvent as a result of the transfer. The issue is whether the Debtor received less than reasonably equivalent value in exchange for such transfer as required by 11 U.S.C. § 548(a)(1)(B)(i).

The Trustee argues that reasonably equivalent value was not received because the Debtor transferred the Property to the Defendant for $246,000, and then re-sold the Property to a third party for $289,950. The Trustee argues that the Debtor's net worth was therefore diminished by the amount the Defendant gained, or $43,950.

At the time of the transfer, the Debtor had defaulted on payments to Countrywide and a non-judicial foreclosure sale was scheduled for June 22, 2007. The Defendant obtained the agreement of Countrywide to accept a "short payoff" on its second mortgage. According to Countrywide's letter dated March 3, 2007, Countrywide's agreement was contingent upon several factors and exclusive to the sale to the Defendant. If the transaction had not occurred, it is likely that the Property either would have been lost in foreclosure prepetition or the Property would have entered the Debtor's bankruptcy estate with both liens intact.

The Trustee points to a form letter received by the Debtor from Countrywide dated July 8, 2008, as evidence that the Debtor's personal liability was never released. According to the Trustee, the Debtor did not receive substantially equivalent value because the end result of the transaction was to merely convert Countrywide from a secured to unsecured creditor. The

MEMORANDUM DECISION - 6

Court, however, does not conclude that the July 8, 2008 letter is credible evidence of any existing liability of the Debtor to Countrywide after the transfer occurred. This letter appears to be a form, possibly mistakenly sent to the Debtor by Countrywide from its insurance department. In the March 3, 2007 letter, Countrywide specifically stated that it agreed to "release" its lien for the payment of $1,000. The Settlement Statement for the transfer of the Property from the Debtor to the Defendant discloses $1,000 as "Payoff 2nd Mtg. Ln. Countrywide Home Loans." Other than the July 8, 2008 form letter inquiring as to insurance, there is no evidence of any continuing liability of the Debtor to Countrywide after the short sale occurred. There is no evidence that Countrywide has demanded additional payments or taken other debt collection actions against the Debtor. When the Debtor filed bankruptcy, no debt to Countrywide was disclosed in his schedules, as he apparently did not believe that additional liability remained when the petition was filed. The most credible evidence is that reasonably equivalent value was received in exchange for the transfer in the form of approximately $59,000 in debt forgiveness on the second mortgage owed by the Debtor to Countrywide. The Plaintiff has failed to meet her burden of proof to establish that the Debtor received reasonably equivalent value.

### B.  11 U.S.C. § 547

The Trustee also alleges that the transfer is recoverable as a preference. 11 U.S.C. § 547(b) provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>   (1) to or for the benefit of a creditor;
>   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>   (3) made while the debtor was insolvent;
>   (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or

MEMORANDUM DECISION - 7

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if –
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

There is no dispute that the sale was a transfer of an interest of the Debtor, or that the Debtor was insolvent at the time of the transfer or rendered insolvent by the transfer. The issue is whether the transfer was for or on account of an antecedent debt to or for the benefit of a creditor, and whether the transfer was to an insider.

The Defendant has stated that the transfer of the equity created by the sale to Bramble was compensation for his efforts in arranging the transfer. The Defendant has submitted time sheets alleging that he incurred over $13,500 in fees and costs between January 2, 2007 and April 10, 2007. This amount was paid to the Defendant, along with a "bonus" of $6,500, more than 90 days prior to filing but within one year of the petition date. The Defendant argues that as the payment of such fees for his services were contingent upon the sale closing, there was no antecedent debt. In other words, if the sale had not closed, the Debtor would not have owed any funds to him. The contingent nature of the payment, however, is irrelevant. A debt is a liability on a claim. 11 U.S.C. § 101(12). A claim includes a right to payment whether or not such right is contingent, unmatured, disputed or secured. 11 U.S.C. § 101(5)(A). An antecedent debt arises once an agreement is reached and services provided, even though payment may be contingent. See, e.g., Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Ga., Inc.), 102 B.R. 878, 886 (Bankr. M.D. Ga. 1989). The closing occurred and the

MEMORANDUM DECISION - 8

payment was made within one year of the bankruptcy filing. As the services commenced in January, 2007, the payment was on account of an antecedent debt.

The next issue is whether the Trustee can establish that the Defendant was an insider of the Debtor at the time of the transfer. For an individual debtor, the Bankruptcy Code defines the term "insider" to include the following: (i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer or person in control. 11 U.S.C. § 101(31)(A).

Although the Defendant does not fit into any of the above categories, the Court recognizes that this is not an exclusive list. "The use of the word 'includes' is indicative of Congress' intent not to limit the classification of insiders to the statutory definition. <u>Sheila Plotsky Brokers, Inc. v. Friedman (In re Friedman)</u>, 126 B.R. 63, 69-70 (9th Cir. BAP 1991). In <u>Friedman</u>, the Ninth Circuit Bankruptcy Appellate Panel (BAP) recognized that insider status may be based on a relationship other than affinity or consanguinity. The BAP stated that "insider status may be based on a professional or business relationship with the debtor, in addition to the Code's *per se* classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of dealings between the parties." <u>Friedman</u>, 126 B.R. at 69-70. In <u>Miller v. Schuman (In re Schuman)</u>, 81 B.R. 583 (9th Cir. BAP 1987), the BAP recognized that courts have focused on the following factors in determining whether insider status exists: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length. <u>Schuman</u>, 81 B.R. at 586.

MEMORANDUM DECISION - 9

In Friedman, a Chapter 11 debtor attempted to avoid a deed of trust lien arguing that the defendant real estate brokers were insiders. The parties had a long and extensive business relationship during which the brokers assisted the debtor with real estate investments over a five year period. The evidence indicated that the parties spoke on the phone over a thousand times each year, the debtor left the defendants pre-signed blank promissory notes with various banks so that they could act quickly if an investment opportunity arose, and the debtor even granted the defendants signatory rights on several bank accounts. Friedman, 126 B.R. at 64-65. The BAP determined that the relationship did not raise the defendants status to that of an insider for purposes of 11 U.S.C. § 547.

The facts of the case before the Court are even less compelling than in Friedman. Although the Defendant caused the Debtor to sign various blank agreements and a power of attorney, it was a limited power of attorney, in effect for this transaction only and which by its terms expired at closing. As with 11 U.S.C. § 548(a)(1)(A), there is no evidence that the relationship between the parties was anything other than a one time business transaction. A preponderance of the evidence indicates that the control the Defendant allegedly had over the transaction is not sufficient to subject him to insider status.

### C.  Consumer Protection Act

The Trustee argues that the transaction at issue was a violation of the Washington State Consumer Protection Act (CPA). RCW 19.86.020 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.090 authorizes treble damages, up to the amount of $10,000, plus attorney fees and costs.

The Trustee argues that if the transaction occurred today, it would be a per se violation of the CPA pursuant to RCW 61.34, the Distressed Property Conveyances Act. See RCW 61.34.040. Even if the Trustee could establish a violation of the Distressed Property Conveyances Act, however, the conduct complained of predates that Act. A per se violation of the CPA cannot be established. The Trustee must therefore establish that the elements for a CPA violation have been met.

To establish a claim for violation of the CPA, the Trustee must establish five elements: (1) an unfair of deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) an injury to plaintiff in his business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986).

The Court agrees that the Defendant was involved in trade or commerce and that his actions arguably affect the public interest. The CPA claim fails because the Trustee is unable to establish an injury to the Debtor. As stated above, prior to the transfer, the Debtor's Property was encumbered by two mortgage liens held by Countrywide that exceeded the fair market value of the Property. The Debtor admittedly could not afford to make the payments and a property foreclosure sale was scheduled. In transferring the Property, the Defendant negotiated a short sale by which Countrywide agreed to release its second mortgage lien for the payment of $1,000. If the transfer had not occurred, a preponderance of the evidence indicates that the Property would have either been sold in a prepetition foreclosure or the

Debtor would have filed bankruptcy with both liens intact. No injury to the Debtor has been established.

DATED: October 3, 2008

*Paul B. Snyder*
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 12